IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TANYA HANKINS-HOLLINGER, individually and as the Executrix of the Estate of Edward Robert Hollinger,**<br><br>Plaintiff,<br><br>v.<br><br>**UPMC SHADYSIDE HOSPTIAL and UNITED STATES OF AMERICA,**<br><br>Serve:  Richard P. Kidwell, Esq.<br>           Senior Associate Counsel<br>           Vice President of Risk Management<br>           UPMC Presbyterian Hospital<br>           200 Lothrop Street, Suite G300<br>           Pittsburgh, PA 15213<br><br>           U.S. Attorney for the Western<br>           District of PA<br>           David J. Hickton<br>           United States Post Office and<br>           Courthouse<br>           700 Grant Street, Suite 4000<br>           Pittsburgh, PA 15219<br><br>           Defendants. | Civil Action No.<br><br>Judge: |

### PLAINTIFF'S COMPLAINT IN CIVIL ACTION WITH ATTACHED CERTIFICATES OF MERIT

**AND NOW** comes the Plaintiff Tanya Hankins-Hollinger by and through her attorneys Scott D. Glassmith, Esquire and Gismondi & Associates, P.C. and sues the Defendants United States of America and UPMC Shadyside Hospital, of which the following is a statement:

### JURISDICTION AND VENUE

1. This action is brought, inter alia, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671-2680.  Jurisdiction is founded on 28 U.S.C. § 1346(b)(1).  The acts more fully

    described below occurred within the jurisdiction of the United States District Court for the Western District of Pennsylvania.

2. All conditions required by the Federal Tort Claims Act have been satisfied prior to the filing of this lawsuit. Specifically, a Form 95 was timely served on behalf of the Decedent with the appropriate Federal Agency, United States Department of Veteran's Affairs (hereinafter referred to as the Veteran's Administration). (See letter dated January 8, 2015, from the Veteran's Administration Office of Regional Counsel acknowledging the claim, attached as Exhibit "A").

3. Defendant, United States of America, acting through the Veteran's Administration, provided a formal denial of Plaintiff's claim by letter with the mailing date of June 10, 2015 (See letter from the Veteran's Administration denying claim dated June 10, 2015 attached as Exhibit "B"). Therefore, Plaintiff is permitted to bring the instant action directly in the U.S. District Court pursuant to 28 U.S.C. § 2675 (a).

4. Jurisdiction over the pendent state claim against Defendant UPMC Shadyside Hospital is founded on 28 U.S.C. § 1367 (a).

**PARTIES**

5. Plaintiff Tanya Hankins-Hollinger is the wife and Executrix of the Estate of Edward R. Hollinger presently residing at 513 Holmes Street, Pittsburgh, PA 15221.

6. Plaintiff brings this action individually and in her representative capacity as the Executrix of the Estate of her late husband Edward Hollinger, pursuant to the Federal Tort Claims Act 28. U.S.C. § 1346 (b) and 2671, et seq., for negligence in medical treatment provided to Edward Hollinger by the Defendant, United States of America.

7. Defendant UPMC Shadyside Hospital (hereinafter referred to as "UPMC Shadyside") is a

      general medical facility which provides medical services through its various employees and agents at a principal location of 5230 Centre Avenue, Pittsburgh, PA 15232.  Plaintiff is asserting a professional liability against this Defendant.

8. At all times relevant to this matter, the Defendant, United States of America, owned and operated an inpatient hospital, medial and surgical facility at the Department of Veteran's Affairs, Pittsburgh VA Medical Center (hereinafter referred to as "VA Pittsburgh") with a principle address of University Drive, Pittsburgh, PA 15240.  Plaintiff is asserting a professional liability claim against this Defendant.

9. At all times pertinent to this matter, Defendant United States of America, administered medical treatment to Edward Hollinger by and through various physicians, residents, interns, specialists, nurses and other personnel that Defendant, United States of America, engaged on the staff of the VA Pittsburgh as its agents, servants, employees and ostensible agents who were acting within the course and scope of that relationship with Defendant United States of America.

## ALLEGATIONS OF FACT

10. The facts of this matter may be briefly summarized as follows:

    a. On February 1, 2012, Edward Hollinger (hereinafter referred to as "Decedent") presented at the UPMC Shadyside Emergency Department with a chief complaint of chest pain.

    b. He was admitted for observation to rule out a myocardial infarction and a CT angio was ordered to rule out dissection.

    c. The CT angiogram was interpreted by Friedrich D. Knollman, M.D. who at all times relevant hereto was an employee and/or agent of Defendant UPMC

       Shadyside.

d.    Dr. Knollman interpreted the aforementioned study as "left upper lobe contains a 12 mm nodular opacity with an enlarged draining vein and enlarged feeding pulmonary artery branch most likely representing a partially thrombosed AVM."

e.    The Decedent was discharged from the emergency department of UPMC Shadyside and advised that his symptoms were "non-cardiac." He was to follow up with his primary care physician.

f.    On July 2, 2013 Decedent presented to his primary care physician, John M. Stramat, M.D. with bronchitic symptoms including a dry cough. At all times relevant hereto, Dr. Stramat was an employee and/or agent of the Veteran's Administration and the Defendant United States of America.

g.    At that office visit, Dr. Stramat ordered a chest x-ray.

h.    On July 11, 2013, the chest x-ray was taken and interpreted the following day as follows: "Increased density in the right paratracheal soft tissues. While this could be exaggerated by positioning and represent a vascular structure, lymph node enlargement is not excluded. **A chest CT with contrast is recommended.**" (Emphasis added).

i.    Despite the recommendation of a follow up chest CT with contrast, this study was never ordered or taken.

j.    Despite follow up care by Dr. Stramat, he never ordered the chest CT nor advised the Decedent that the study had been recommended.

k.    On September 15, 2014 Decedent presented to the Veteran's Administration Emergency Department with complaints of chest pain and cough. At that time it

        was noted that a CT with contrast had been recommended in July 2013.

l.     A chest x-ray was conducted which found right paratracheal soft tissue fullness, and again a CT of the chest was recommended.

m.    On September 18, 2014 the CT of the chest was conducted and among other findings was "highly suspicious for lung carcinoma . . ."

n.    On September 22, 2014 Decedent met with his new primary care physician, Sathiavat Natarajan, M.D. At that appointment Decedent was notified of the CT findings and was scheduled for biopsy.

o.    On September 25, 2014 a liver biopsy was conducted which confirmed a diagnosis of metastatic adenocarcinoma of the lung.

p.    On October 6, 2014 Decedent met with an oncologist and was advised that he had Stage IV adenocarcinoma of the lung with mets to the liver. He was advised that his disease could no longer be cured, but was given hope that treatment might prolong his survival.

q.    Commencing in October 2014 Decedent underwent palliative care including chemotherapy. Despite this treatment, Decedent died on May 14, 2015.

## COUNT I - MEDICAL MALPRACTICE

## TANYA HANKINS-HOLLINGER INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF EDWARD HOLLINGER V. UPMC SHADYSIDE HOSPITAL

11.    Paragraphs 1 through 10 above are incorporated by reference as though fully set forth at length.

12.    Decedent's aforementioned death was a direct and proximate result of the negligence of

employees and/or agents of UPMC Shadyside in the following particulars:

    a.    In failing to properly read and interpret the CT angiogram of the chest conducted at UPMC Shadyside on February 2, 2012;

    b.    In misinterpreting a nodular abnormality in the left upper lobe as an artero-venous malformation (AVM);

    c.    In failing to report the abnormality as a solid nodule thus raising the possibility of malignancy; and

    d.    In failing to recommend a PET/CT.

13. As a result of the aforementioned negligence and deviation from the accepted standard of care, the risk of harm to the Decedent was increased which ultimately led to his untimely death.

14. As a result of the aforementioned negligence by the employees and/or agents of UPMC Shadyside, Plaintiff Tanya Hankins-Hollinger, on behalf of the Decedent's estate, claims all appropriate damages under the Survival Act, including but not limited to the following:

    a.    Loss of income, earnings and earning capacity; and

    b.    Pain and suffering.

15. As a result of the aforementioned negligence of the employees and/or agents of Defendant UPMC Shadyside, Plaintiff Tanya Hankins-Hollinger claims all appropriate damages under the Wrongful Death Act, including but not limited to the following:

    a.    Loss of economic contribution;

    b.    Loss of society, comfort, and consortium;

    c.    Loss of household services;

  d. Loss of guidance, tutelage, and moral upbringing;

  e. All medical expenses incurred by the Decedent; and

  f. All funeral and estate administration expenses.

**WHEREFORE**, based upon the foregoing, Plaintiff herein respectfully requests that this Honorable Court enter judgement in her favor for the negligent medical treatment provided to the Decedent, against the Defendant UPMC Shadyside Hospital, in the sum of **$5,000,000.00 (Five Million Dollars**), prejudgment interest, attorney's fees and costs expended in this action and for such other relief as the Court deems necessary and just.

## COUNT II - MEDICAL MALPRACTICE

## TANYA HANKINS-HOLLINGER, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF EDWARD HOLLINGER V. UNITED STATES OF AMERICA

16. Paragraphs 1 through 15 above are incorporated by reference as though full set forth at length.

17. Decedent's aforementioned death was a direct and proximate result of the negligence of the employees and/or agents of Defendant United States of America in the following particulars:

  a. In failing to promptly order and conduct the chest CT scan that had been recommended on July 11, 2013;

  b. In failing to have proper procedures in effect that would make certain that such recommendation would be followed; and

  c. In failing to promptly diagnose and treat Decedent's condition.

18. As a result of the aforementioned negligence and deviation from the accepted standard of

care, the risk of harm to the Decedent was increased which ultimately led to his untimely death.

19. As a result of the aforementioned negligence by the employees and/or agents of Defendant United States of America, Plaintiff Tanya Hankins-Hollinger, on behalf of the Decedent's estate, claims all appropriate damages under the Survival Act, including but not limited to the following:

    a.    Loss of income, earnings, and earning capacity; and

    b.    Pain and suffering.

20. As a result of the aforementioned negligence of the employees and/or agents of Defendant United States of America, Plaintiff Tanya Hankins-Hollinger claims all appropriate damages under the Wrongful Death Act, including but not limited to the following:

    a.    Loss of economic contribution;

    b.    Loss of society, comfort, and consortium;

    c.    Loss of household services;

    d.    Loss of guidance, tutelage, and moral upbringing;

    e.    All medical expenses incurred by the Decedent; and

    f.    All funeral and estate administration expenses.

**WHEREFORE**, based upon the foregoing, Plaintiff herein respectfully requests that this Honorable Court enter judgement in her favor for the negligent medical treatment provided to the

Decedent, against the Defendant United States of America, in the sum of **$5,000,000.00 (Five Million Dollars),** prejudgment interest, attorney's fees and costs expended in this action and for such other relief as the Court deems necessary and just.

## PARTIES

21. Pursuant to the provisions of Fed.R. Civ.P. 38(b), Plaintiff respectfully demands trial by jury of all claims or issues raised by this Complaint which are so triable.

Respectfully submitted by:

GISMONDI & ASSOCIATES, P.C.


*/s/ Scott D. Glassmith*
Scott D. Glassmith, Esq.
Attorney for Plaintiff